[No. 34724-1-I.  Division One.  November 6, 1995.]

ELSIE KUYPER, *Appellant*, v. THE DEPARTMENT OF WILDLIFE, *Respondent*.

*Shelley Kostrinsky*, for appellant.
*Christine O. Gregoire, Attorney General*, and *Loretta M. Lamb, Assistant*, for respondent.

AGID, J. — Elsie Kuyper sued the Department of Wildlife (Department) for age and gender discrimination when a position she sought was instead offered to a younger, male candidate. She appeals the trial court's grant of summary judgment, contending that the Department did not produce evidence of a legitimate, nondiscriminatory reason for its hiring decision. She also argues that even if it did, she produced sufficient evidence that the reason was a pretext for discrimination to withstand summary judgment. We conclude Kuyper did not produce sufficient evidence that the Department's showing of a legitimate, nondiscriminatory basis for its hiring decision was a pretext for discrimination and affirm.[1]

## FACTS

Kuyper started working for the Department in 1968.

---

[1]Kuyper further contends the court erred in denying her motions to (1) compel discovery of information about other applicants for the position, (2) strike the Department's motion for summary judgment, and (3) strike portions of affidavits in support of the motion. These issues are addressed in the unpublished portion of this opinion.

The Department is divided into six regions across the state. Kuyper has been a Land Agent in Region 4 since 1979. In 1991, the Department decided to restructure its divisions. As part of the restructuring, it created a new division, the Lands Resource Division, and the new position of regional Lands Program Coordinator (Coordinator). The Coordinator's duties included responsibilities formerly assigned to Land Agents. Although the Department eliminated the Land Agent position in three of its six regions, Region 4, which includes the Seattle area, kept its Land Agent position because of the area's population density.

To fill the six new Coordinator positions, the Department drafted a classification questionnaire and issued bulletins announcing the positions. It had two subject matter specialists score applications for the positions using an examination and scoring system set up by the Department of Personnel. Personnel generated a register based on the scores listing the top five candidates and any protected class candidates. Personnel then forwarded the register to the Department.

Kuyper applied for the Coordinator position in Region 4. The register for that region listed her as the number three candidate. The register also listed her as a protected class candidate because of her age and gender. Murray Schlenker, a younger male, also applied for the position. Kuyper and Schlenker received the same score, 97.1, on the initial exam. He was listed fourth on the register.

Once Personnel creates a register, an agency may hire any person on the list. An agency may also elect to further test or interview candidates on the register. The Department elected to conduct additional oral testing of the candidates and appointed a panel to conduct the interviews. Its members were Jenene Ratassepp, the Lands Division Assistant Director, and two regional managers. The panel interviewed both Kuyper and Schlenker in January 1992. Schlenker scored 136 points in the interview, the highest interview score of all the candidates.

Kuyper scored 96. After the panel tabulated the interview scores, Personnel referred the top candidate for each region to the regional managers. Some regional managers conducted further interviews of the top candidates. There were no further interviews in Region 4 and Schlenker was offered the Coordinator position for that region.

Kuyper sued the Department alleging that she was denied the promotion to Coordinator because of her age and gender and that the Department had retaliated against her for opposing its discriminatory practices. In the course of the litigation, she filed a pretrial motion to compel discovery. The Department submitted the requested documents to the court for an in camera review. Following the review, the trial court denied Kuyper's motion. The Department then moved for summary judgment. Kuyper moved to strike the Department's motion because the three supporting declarations were unsigned. She also moved to strike exhibits and excerpts in the Department's moving and reply papers on the ground that they contained inadmissible evidence. The trial court denied both of the motions to strike and granted the Department's motion for summary judgment. Kuyper appeals.

### DISCUSSION

To establish a prima facie case of age and gender discrimination, a plaintiff must show: (1) she was within the statutorily protected age and gender group; (2) she applied and was qualified for an available promotion; (3) she was not offered the position; and (4) the promotion went to a younger male. *Sellsted v. Washington Mut. Sav. Bank*, 69 Wn. App. 852, 851 P.2d 716, *review denied*, 122 Wn.2d 1018 (1993). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the employment decision. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 753 P.2d 517 (1988).

Both parties agree Kuyper met her initial prima facie burden. They do not agree on whether the Department

established a legitimate, nondiscriminatory reason for its decision to hire Schlenker. We conclude that it did. The Department established that Schlenker received the highest interview score for the Region 4 position and produced Ratassepp's written justification for all the Coordinator hiring decisions. This is sufficient evidence of a legitimate, nondiscriminatory basis for the decision. Schlenker was more qualified, and Ratassepp's justification relied on those qualifications.

Kuyper contends the Department's failure to identify the person who made the actual decision to hire Schlenker creates a genuine issue of material fact about whether that person had a legitimate, nondiscriminatory basis for the decision. We reject this argument. While this may be a factual question, it is not a material one. It does not matter *who* made the decision because it is uncontroverted that the Department was free to hire any person from the final list and that Schlenker was the highest scoring candidate. Under the facts of this case, the identity of the person making the decision is simply not relevant to whether the Department can proffer a legitimate, nondiscriminatory reason for its hiring decision.

■ Once the defendant meets its burden of showing a nondiscriminatory basis for its decision, the burden shifts back to the plaintiff to establish that the reason given is merely a pretext for intentional discrimination. *Grimwood*, 110 Wn.2d at 364. The issue before us here is whether Kuyper produced sufficient evidence below to raise an inference that the Department's decision to hire Schlenker based on his interview and test scores was a pretext for intentional discrimination based on Kuyper's gender and age. To meet this burden, Kuyper relied primarily on the declaration of Jim DeShazo, the Region 6 Manager during the hiring period. According to DeShazo, Ratassepp instructed him to hire a woman for the Coordinator position in his region although he wanted to hire a sixty-year-old man. He asserts Ratassepp told him to do so because of "what happened" in Region 4. Assuming the

truth of this evidence, we agree with the Department that it does not show pretext. Like Schlenker, the woman candidate DeShazo hired received the highest interview score for her region. Even if we infer that Ratassepp's comment to DeShazo referred to the Region 4 decision to hire a younger male rather than an older woman, it does not establish that the Region 4 decision was based on discriminatory animas. At most, it shows that Ratassepp wanted to hire a woman in another region if possible because the most highly qualified candidate in Region 4 turned out not to be a woman.

Kuyper also contends the following evidence supports an inference of pretext: She had been performing eighty percent of the Coordinator job in Region 4 for about ten years, while Schlenker performed less than twenty percent of the Coordinator duties for under four years; three male Lands Agents in other regions assumed the Coordinator duties before the hiring process began and were subsequently offered the Coordinator positions in their regions; her supervisor, Bob Everitt, told her that he wanted her as the Region 4 Coordinator and had asked Ratassepp to reconsider the hiring decision; after Kuyper filed her lawsuit, Ratassepp commented she didn't understand why Kuyper did not retire; she was qualified to fill the position and hiring was not limited to the highest scoring candidate; Schlenker indicated he would have accepted a position in a different region and, therefore, could have been offered a position elsewhere.

We disagree that this evidence, even when viewed in the light most favorable to Kuyper, supports an inference of discriminatory intent. Ratassepp made the statement that Kuyper "should just retire" after the process was over and Kuyper had sued the Department. At most it shows she was frustrated by Kuyper's lawsuit. Everitt's statement that Kuyper should have gotten the job establishes only his personal opinion. This opinion, however, simply cannot negate Schlenker's higher score. The fact that Schlenker was offered the Region 4 position although

he was willing to work in other regions is not sufficient to show a discriminatory intent in offering him that position because Schlenker listed Region 4 as his first preference. Finally, Kuyper has not established that the three males hired in other regions were not, like those chosen in Regions 4 and 6, the most qualified applicants for those positions. Their gender alone does not lead to an inference of discriminatory intent.

As evidence of pretext, Kuyper also contends she was treated unfairly during the oral examination. She alleges, for example, that she was given inadequate notice of the examination and that it was cut short when examiners walked out before she was finished. After the hiring decision, Kuyper appealed her examination score and the hiring process to Personnel. The hearing officer upheld her examination score and found that the process was fair. Kuyper did not appeal this determination to the Personnel Appeals Board or to the superior court. It is therefore not an issue on appeal.

The Department does not dispute that Kuyper was qualified for the position and that she had been performing a number of the duties later assigned to the Coordinator. The problem with Kuyper's argument is that the Department was free to hire any of the qualified candidates on the register for that position. That the Department chose a different qualified candidate who happens to be a younger male is not sufficient to establish that the Department intended to discriminate against her.

■■ What is missing from Kuyper's proof is a nexus between her evidence and an adverse employment action based on her gender or age. A plaintiff cannot create a pretext issue without some evidence that the articulated reason for the employment decision is unworthy of belief. *Sellsted*, 69 Wn. App. at 859. To do this, a plaintiff must show, for example, that the reason has no basis in fact, it was not really a motivating factor for the decision, it lacks a temporal connection to the decision or was not a motivating factor in employment decisions for other employees in

the same circumstances. *Sellsted*, 69 Wn. App. at 859-60 n.14. Kuyper's evidence shows none of these things. Although summary judgment in favor of the employer in discrimination cases is often inappropriate because the evidence will generally "contain reasonable but competing inferences of both discrimination and nondiscrimination" that must be resolved by a jury, *Carle v. McChord Credit Union*, 65 Wn. App. 93, 102, 827 P.2d 1070 (1992), this does not mean that discrimination cases may never be disposed of on summary judgment. Where, as here, the plaintiff has produced no evidence from which a reasonable jury could infer that an employer's decision was motivated by an intent to discriminate, summary judgment is entirely proper.[2]

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

KENNEDY, A.C.J., and GROSSE, J., concur.

Review denied at 129 Wn.2d 1011 (1996).

---

[2]Because we affirm the trial court's grant of summary judgment on Kuyper's discrimination claim under RCW 49.60, we do not reach the issue of whether the trial court properly dismissed her state ERA claim. The standard of liability is the same for both causes of action. *Tacoma-Pierce County Pub. Health Employees Ass'n v. Tacoma-Pierce County Health Dep't*, 22 Wn. App. 1, 586 P.2d 1215 (1978), *review denied*, 92 Wn.2d 1005 (1979).