138

[No. 73902-1. En Banc.]
Argued March 25, 2004. Decided July 22, 2004.

MARK RIEHL, *Petitioner*, v. FOODMAKER, INC., *Respondent*.

*Judith A. Lonnquist* and *Richard D. Reed* (of *Law Offices of Judith A. Lonnquist, P.S.*), for petitioner.

*Leigh Ann Collings Tift* and *Katherine Cooper Franklin* (of *Littler Mendelson, P.C.*) and *Blake L. Barnes* (of *T-Mobile Legal Department*), for respondent.

*Kristopher I. Tefft* on behalf of Association of Washington Business and Washington Restaurant Association, amici curiae.

*Jayne L. Freeman* on behalf of Washington Defense Trial Lawyers, amicus curiae.

*Jeffrey L. Needle* and *Michael C. Subit* on behalf of Washington Employment Lawyers Association, amicus curiae.

*Bryan P. Harnetiaux*, *Debra L.W. Stephens*, and *Virginia L. DeCosta* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

Owens, J. — Mark Riehl worked for Foodmaker, Inc. (JIB) for seven years until he was fired in April 1999. Subsequently, JIB refused to rehire Riehl. Riehl, who suffers from depression and posttraumatic stress disorder (PTSD), sued JIB based on lack of accommodation during his employment and disparate treatment during the firing and rehiring process. The trial court granted summary judgment in favor of JIB on both issues. The Court of Appeals reversed summary judgment on the disparate treatment claim and affirmed summary judgment on the accommodation claim because Riehl failed to show that the need for accommodation was a medical necessity. We affirm the Court of Appeals and retain the medical necessity requirement. We hold that if challenged, the employee must come forward at summary judgment or trial with competent evidence establishing a nexus between the disability and the need for accommodation. This ensures that an employer violates its duty to accommodate only where the employee has proved a medical nexus exists and the employer fails to provide reasonable accommodations, absent a showing of undue hardship. Additionally, we find that the appellate court properly reversed summary judgment on Riehl's disparate treatment claim. Riehl has produced evidence showing a genuine issue of material fact as to whether JIB's stated reasons for firing and/or not rehiring Riehl are pretext for a discriminatory purpose. Therefore, it is inappropriate to grant summary judgment on this issue.

## FACTS

Riehl started working for JIB as a driver in 1992 and was promoted to a shift leader in 1995. Riehl became extremely ill in December 1997 and was admitted to the hospital with respiratory failure. From December 1997 until April 1998

Riehl was on sick leave. However, during this time he was promoted to a driver supervisor. He returned to work in April 1998 but was quickly rehospitalized and went on leave again. Clerk's Papers (CP) at 227, 245-48. Riehl returned to work again in July 1998 with no medical restrictions but was later restricted to a six-hour workday. JIB accommodated Riehl by paying him full salary, allowing him to leave early, and allowing him to take work home. By October or November 1998 Riehl was working eight-hour days, working out in the gym, and appeared fully recovered. However, he still had doctor appointments and Frank Luna, his supervisor, was aware of this.

During 1998 JIB moved its distribution center from Tukwila, Washington, to Algona, Washington, because the company needed more room. After the move, a time study was done to determine if all positions should be retained. Based on this study, Luna decided the warehouse supervisor position, held by Jeff Templeton, and the driver supervisor position should be combined. In May 1999 Luna chose Templeton to fill the combined position and fired Riehl. Riehl submitted a new application packet to JIB and spoke with Luna about a driver or warehouse worker position. Luna told Riehl he would keep Riehl informed of open positions, but it appears he was never considered for any open positions.

Riehl filed a complaint against JIB in August 1999. JIB moved for summary judgment and this was granted on December 27, 2000. Riehl filed a motion for reconsideration, which was denied. Riehl appealed the decision, and in an unpublished decision, Division One affirmed the summary judgment motion regarding accommodation and reversed the summary judgment motion regarding disparate treatment. *Riehl v. Foodmaker, Inc.*, noted at 116 Wn. App. 1018, slip op at 10, 13 (2003). The court found that the evidence and reasonable inferences derived from it could convince a reasonable trier of fact that disability was a substantial factor in JIB's decision to fire and/or not rehire Riehl. *Id.* at 8. Two members of the court further held that Riehl did not

prove his prima facie accommodation claim because he did not show an accommodation for PTSD and depression was medically necessary, as required by *Hill* and *Pulcino. Id.* at 13; *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 193, 23 P.3d 440 (2001) (*Hill* II); *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 643, 9 P.3d 787 (2000). The parties petitioned this court for review on both issues, which we granted. *See* RAP 13.7(b).

## ISSUES

1. When challenged at summary judgment or trial, does an employee have to show accommodation is a medical necessity in an accommodation claim, and does the employer have to provide only medically necessary accommodations?

2. Did Riehl create a genuine issue of material fact regarding JIB's reasons for firing and not rehiring him by showing those reasons are pretextual?

3. Should Riehl be awarded attorney fees on appeal?

## STANDARD OF REVIEW

On summary judgment we conduct the same inquiry as the trial court. *Pulcino*, 141 Wn.2d at 639. We affirm summary judgment where the "pleadings, depositions, affidavits, and admissions, viewed in a light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* However, we note that in employment discrimination cases summary judgment in favor of the employer is seldom appropriate. *deLisle v. FMC Corp.*, 57 Wn. App. 79, 84, 786 P.2d 839 (1990).

## ANALYSIS

■ RCW 49.60.180, a part of the Washington Law Against Discrimination chapter, states that it is an unfair practice for an employer to refuse to hire, to discharge, or

to discriminate in compensation based on a person's sensory, mental, or physical disability. RCW 49.60.010, .180(1)-(3).[1] Under RCW 49.60.180, a disabled employee has a cause of action for at least two different types of discrimination. The employee may allege failure to accommodate where the employer failed to take steps "reasonably necessary to accommodate the employee's condition." *Jane Doe v. Boeing Co.*, 121 Wn.2d 8, 17, 846 P.2d 531 (1993). The employee also may file a disparate treatment claim if the employer discriminated against the employee because of the employee's condition. *Id.* Here, Riehl alleges both types of discrimination.

## A. Accommodation

To eliminate discrimination in the workplace, state law requires employers to reasonably accommodate a disabled employee unless the accommodation would be an undue hardship on the employer. *Pulcino*, 141 Wn.2d at 639; former WAC 162-22-080 (1998). The court has laid out four elements that an employee must show to prove discrimination based on lack of accommodation:

> (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.

*Hill* II, 144 Wn.2d at 192-93; *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003). JIB concedes Riehl was disabled, and Riehl notified JIB of his disability for the purposes of summary judgment. Further, JIB does not dispute that Riehl could perform the essential functions of

---

[1] The term "disability" will be used to refer to physical, mental, and sensory disabilities. Further, "disability" or "disabled" will be used instead of "handicap." *See Hill* II, 144 Wn.2d at 191 n.17.

his job. Therefore, the only issue we must decide is whether JIB was required to accommodate Riehl beyond steps already taken, even though Riehl did not offer proof that further accommodation for his disability was medically necessary.

In *Doe*, the court explained the limits on an employer's duty to accommodate and stated that the duty to accommodate "is limited to those steps reasonably necessary to enable the employee to perform his or her job." 121 Wn.2d at 18. The term "reasonable" is linked to necessity and limits the duty to "removing sensory, mental or physical impediments to the employee's ability to perform his or her job." *Id*. at 21. To decide what is a reasonable accommodation, the job specifications and impact of the condition on work tasks should be evaluated. *Id*. at 20. Further, if the disability is caused by trauma or physical deterioration, the accommodation may be apparent and the main question will be if the accommodation is reasonable. *Id*. at 20-21.[2]

The court in *Doe* also suggested that where the need to accommodate an employee is not medically confirmed, it is not reasonable to require the employer to provide accommodation. *Id*. at 18-19 (explaining that Doe's determination that she needed to dress as a woman based on gender dysphoria was not medically supported). In *Hill* I, the appellate court cited *Doe* and held that "the employee must prove that accommodation is medically necessary." *Hill v. BCTI Income Fund-I*, 97 Wn. App. 657, 668, 986 P.2d 137 (*Hill* I) (1999), *aff'd in part, vacated in part, Hill* II, 144 Wn.2d at 194. Because the employee failed to show that transfer to a new office was medically necessary to accommodate her asthmatic condition, the court denied her accommodation claim. *Hill* I, 97 Wn. App. at 668-69; *Hill* II,

---

[2] The employer does not have a duty to reassign an employee to an already occupied position, create a new position, alter the fundamental nature of the job, eliminate or reassign essential job functions, provide a new supervisor, give the employee preference over a more qualified employee, or necessarily grant a specific request. *Pulcino*, 141 Wn.2d at 643-44; *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 242, 35 P.3d 1158 (2001); *Dean v. Mun. of Metro. Seattle*, 104 Wn.2d 627, 634, 708 P.2d 393 (1985).

144 Wn.2d at 193. Since *Hill* I, we have continuously upheld the medical necessity element of an accommodation claim. *See Pulcino*, 141 Wn.2d at 643; *Hill* II, 144 Wn.2d at 193; *Davis*, 149 Wn.2d at 532. Riehl and amicus now argue that an employee does not have to prove accommodation is medically necessary.

The doctrine of stare decisis "requires a clear showing that an established rule is incorrect and harmful before it is abandoned." *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). Further, "[t]he Legislature is presumed to be aware of judicial interpretation of its enactments," and where statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same statutory language. *Friends of Snoqualmie Valley v. King County Boundary Review Bd.*, 118 Wn.2d 488, 496-97, 825 P.2d 300 (1992). The court has established a clear rule that where an employee determines he or she needs accommodation for a disability but fails to provide a medical nexus between the disability and the need for accommodation, accommodation is not medically necessary. If accommodation is not medically necessary, it is unreasonable to require an employer to provide accommodation. The legislature and the Human Rights Commission[3] have not changed the law or regulations to show this rule is incorrect. *See* RCW 49.60.180; former WAC 162-22-010 through -100 (1998).

Further, the rule does not have a harmful effect on employees. If challenged at summary judgment or trial, the employee must provide competent evidence establishing a nexus between the disability and the need for accommoda-

---

[3] The legislature created a state agency, the Human Rights Commission, to prevent and eliminate discrimination in employment. RCW 49.60.010, .050. The commission may "adopt, promulgate, amend, and rescind suitable rules and regulations to carry out the provisions of [chapter 49.60 RCW]." RCW 49.60.120(3). These regulations are found at former WAC 162-22-010 through -100 (1998). The 1998 WAC regulations are referenced because Washington State Register 99-15-025 amended and repealed this section effective August 12, 1999, and the employment actions here occurred between July 1998 and May 1999.

tion.[4] This requirement is not burdensome; it simply requires evidence in the record that a disability requires accommodation. Competent evidence establishing a nexus between a disability and the need for accommodation will vary depending on how obvious or subtle the symptoms of the disability are. Medical expert testimony may or may not be required depending on the obviousness of the medical need for accommodation in the sound discretion of the court. Where the disability and need for accommodation is obvious, such as a broken leg, the medical necessity burden will be met upon notice to the employer, and the inquiry will not be if accommodation is needed, but rather what kind of accommodation is needed. However, in the case of depression or PTSD, a doctor's note may be necessary to satisfy the plaintiff's burden to show some accommodation is medically necessary. Although a doctor may not be able to prescribe a specific form of accommodation, a letter or note will provide a sufficient nexus between the disability and the need for accommodation. This nexus appropriately limits the employer's duty to accommodate and assures that an employer is not required to provide unnecessary accommodations.[5]

Here, Riehl did not provide a nexus between his disabilities, depression and PTSD, and a need for accommodation beyond what JIB provided. There was no medical confirmation in the record that Riehl's abnormalities required further accommodation, such as feedback and a performance evaluation, and the need to accommodate his disability was not obvious and required greater documentation to survive

---

[4] The employee must show only a medical nexus between the disability and the need for any accommodation, hence our reference to the need for "accommodation" and not "*an* accommodation."

[5] We recognize that providing a nexus between an abnormality and the job is part of element one under *Pulcino*'s definition of disabled because the employee must show the disability limits his or her ability to do the job. *Pulcino*, 141 Wn.2d at 641; *Hill* II, 144 Wn.2d at 192-93. However, although the medical necessity element somewhat overlaps this requirement, we retain the medical necessity element because it prevents employees from requesting accommodations based upon their own perception of a need for accommodation where there is no medical confirmation that such need exists.

summary judgment.[6] JIB had to provide accommodations to Riehl only if it was medically necessary to do so. Therefore, summary judgment for JIB was appropriate.

## B. Disparate Treatment

 Under RCW 49.60.180 and former WAC 162-22--050 (1998), an employer may not refuse to hire a person or otherwise discriminate against a person because a person has a disability if the person is qualified to do the job. Riehl alleges that JIB fired and/or refused to rehire him because he was disabled. Riehl carries the ultimate burden of persuasion and at trial must show that a discriminatory intent was a substantial factor in JIB's actions. *Hill* II, 144 Wn.2d at 185-87. However, to survive summary judgment Riehl need show only that a reasonable judge or jury *could* find Riehl's disability was a substantial factor motivating JIB's adverse actions. *deLisle*, 57 Wn. App. at 83; *see also Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 307-08, 310, 898 P.2d 284 (1995) (citing *deLisle* and clarifying that the proper test is "substantial factor" not the "determining factor" test used in *deLisle*). This is a burden of production, not persuasion, and may be proved through direct or circumstantial evidence. *deLisle*, 57 Wn. App at 83-84, 86.

 In *Hill* II, the court explained that where the employee lacks direct evidence, the employee may survive summary judgment if the employee creates a presumption

---

[6] Riehl did provide JIB with a doctor's note restricting him to six-hour work days shortly after his return to work. The record also contains a note from his doctor, dated five months after Riehl's termination, stating that he suffers from depression and PTSD and is disabled by it. However, where, as here, the disability and need for accommodation is not obvious, this evidence does not provide a sufficient medical nexus between the disability and the need for further accommodation. "Medical nexus" does not mean "therapeutically necessary," just that a connection exists between the condition and the need for accommodation. Nothing in this opinion should be seen to overrule or question *Dean*, which held that a reasonable accommodation could include assistance in transferring to a different position. 104 Wn.2d at 639. Similarly, nothing should be read as preventing an employer and employee from working together to find "accommodation" that, while not strictly speaking "medically necessary," nonetheless allows the employee to do the job effectively.

of discrimination by presenting a prima facie case. 144 Wn.2d at 179-81. JIB does not dispute that Riehl proved a prima facie case of discrimination: (i) Riehl was disabled, (ii) Riehl was able to perform his job, (iii) Riehl was fired and not rehired, (iv) Templeton, a nondisabled person was not fired, and it appears Eddie Simms, a presumably nondisabled person, was hired. *Riehl*, slip op. at 5 (stating that JIB concedes the prima facie case for the appeal); *Roeber v. Dowty Aerospace Yakima*, 116 Wn. App. 127, 135, 64 P.3d 691, *review denied*, 150 Wn.2d 1016 (2003); *Hill* II, 144 Wn.2d at 181 (discussing age discrimination).

Once an employee proves his or her prima facie case, the employer must produce evidence that the employment action was based on legitimate, nondiscriminatory reasons to rebut the presumption of discrimination. This is a burden of production only, not a burden of persuasion. *Hill* II, 144 Wn.2d at 181. JIB has fulfilled this burden by producing evidence that Riehl was fired because the company did not need two supervisors, Templeton had better job performance, and Riehl's attitude and comments during the rehiring process made him ineligible for rehire.

Because JIB has sustained its burden, Riehl must produce evidence that shows JIB's stated reasons for the adverse action are pretext for a discriminatory intent. *Hill* II, 144 Wn.2d at 182. Generally, when an employee produces his or her prima facie case plus evidence of pretext, a trier of fact must determine the true reason for the action because the record contains reasonable but competing inferences of both discrimination and nondiscrimination. *Id.* at 185-86. In light of the evidence discussed below, we find that Riehl has produced evidence showing a genuine issue of material fact regarding whether JIB's articulated reasons are pretextual. We therefore affirm the appellate court and hold that Riehl's disparate treatment claim survives summary judgment. *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 738-39, 904 P.2d 793 (1995) (listing several ways an

employee may prove the employer's reasons are pretextual).[7]

After JIB moved to the new Algona facility, Luna conducted a time study and based on the results decided there was not enough work to keep both a warehouse supervisor and a driver supervisor busy. However, Riehl stated that his workload was not significantly reduced when the facility moved to Algona. Further, the first three fiscal quarters of the 1999 fiscal year were among the most profitable in JIB history. The number of employees working in the company and working in the distribution centers increased, and JIB was expanding the number of restaurants in the region served by the Algona distribution center. In light of this evidence, a trier of fact should decide if JIB's "downsizing" argument is credible.

JIB further contends that Templeton was a better choice for the combined position, but evidence in the record regarding both employees' job performance and job qualifications makes this proposition questionable. Riehl worked as a driver for 10 years and had managed drivers, but Templeton had never been a commercial driver and did not hold a class A commercial driver's license. Although Luna stated that Templeton had experience in both positions, Templeton's experience was gained when Riehl was out on sick leave. Riehl never had a similar opportunity to learn the warehouse supervisor position. CP at 87.

Regarding job performance, Templeton and Riehl were promoted to shift leaders and then to supervisors at about the same time. On his 1998 performance evaluation,

---

[7] We grant JIB's motion to strike portions of petitioner's combined answer to briefs of amici curiae and strike the portions of the answer arguing disparate treatment, specifically section IIA. RAP 10.3(f) limits answers to amicus to new matters raised in the amicus brief. Disparate treatment is not a new matter, as it was raised by JIB in JIB's answer to Riehl's petition for review and in JIB's supplemental brief to this court. Further, the amici do not argue the merits of the disparate treatment claim, but rather focus on the appropriateness of medical necessity in an employee's prima facie accommodation claim case. However, disregarding this portion of Riehl's brief does not change our finding of pretext. Reviewing the record de novo, and examining Riehl's briefs to the Court of Appeals, we find the Court of Appeals properly concluded that Riehl produced evidence showing genuine issues of material fact regarding pretext. *Riehl*, slip op. at 10.

Riehl received a higher score than Templeton. Although Luna stated he considered the most recent job evaluations the most important, Riehl did not receive a 1999 evaluation despite his requests. Further, even if Riehl's performance decreased, this may have been based on his disability. Conduct resulting from the disability (e.g., decrease in performance) is part of the disability and not a separate basis for termination. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001) (interpreting the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101). Finally, when Riehl was fired Luna told him and his wife that it was not based on his performance.

 Evidence regarding a manager's file kept on Riehl and stray comments made about Riehl also show JIB's stated reasons for its actions are questionable. Luna kept notations of complaints about Riehl and a memo regarding a conversation he had with Riehl about the complaints. Although Riehl stated that JIB usually documents performance problems and shares them with employees, Riehl never saw this information, even though he requested feedback on his performance. Further, Luna made comments about Riehl's personality after his illness and made comments suggesting he was not the same as the "old Mark" or he was becoming more like the "old Mark." CP at 98. These comments suggest that Luna's decision to fire and/or not rehire Riehl was based on Riehl's personality difference, which may have been caused by his disabilities. *But see Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985) (noting that casual or trivial manifestations of discrimination alone do not violate the law).

JIB's reasons for not rehiring Riehl are also debatable. On May 19, 1999, Riehl submitted a new application packet to JIB. Luna alleges that Riehl stated he did not trust Luna and seemed angry about being fired and replaced by Templeton. Whether Riehl made these comments is arguable. Luna told Riehl that Eddie Simms had been offered a previously open driver's job. However, Simms, the driver who presumably filled the open position, contacted Riehl on

May 23, and told Riehl he had not yet accepted the new position or given his current employer notice of leaving. Luna told Riehl that he would keep Riehl informed of future positions and talk to the human resource manager, but in reality Riehl was never considered for any positions. No document stated Riehl was ineligible for rehiring and Riehl was never told he was ineligible for rehire. However, based on Riehl's alleged derogatory comments to Luna, Luna decided that Riehl was ineligible to be rehired.

In conclusion, based on the above evidence, we affirm the appellate court and hold that Riehl has satisfied his burden by showing that there is a genuine issue of material fact regarding JIB's actions and a reasonable trier of fact could find Riehl's disability was a substantial factor in JIB's adverse employment actions.

## C. Attorney Fees

Riehl requests attorney fees pursuant to RAP 18.1 and chapter 49.60 RCW. Suppl. Br. on Behalf of Pet'r at 19. RAP 18.1 allows recovery of attorney fees and expenses where the law grants the right to recover such fees. "RCW 49.60.030(2) has been interpreted as granting parties a right to attorney fees on appeal" for discrimination based suits. *Allison v. Hous. Auth. of Seattle*, 118 Wn.2d 79, 98, 821 P.2d 34 (1991). However, even if a party requests such fees under RAP 18.1, the party must prevail on his or her claim to receive attorney fees. *Id*. Where a party has succeeded on appeal but has not yet prevailed on the merits, the court should defer to the trial court to award attorney fees. *McClarty v. Totem Elec.*, 119 Wn. App. 453, 472-73, 81 P.3d 901 (2003). If the party prevails on the merits, the trial court may award fees for trial and appellate costs. *Id*. Because Riehl's disparate treatment claim has survived summary judgment, but has not yet been decided on the merits, we defer to the trial court to award attorney fees.

## CONCLUSION

We affirm the Court of Appeals and hold that when an employee's accommodation claim is challenged at summary judgment or trial, the employee must establish a medical nexus between his or her disability and the need for accommodation. The term "medical necessity" refers to the employee's requirement to establish this nexus. An employer has to provide only medically necessary accommodations, and retaining the medical necessity requirement ensures that this is the case. Here, we find that summary judgment for JIB was appropriately granted because Riehl did not provide medical evidence of a nexus between his depression and PTSD and a need for further accommodation. We emphasize that we do not hold expert testimony is per se required at summary judgment so long as other competent evidence, or a reasonable inference of medical necessity, exists.

Further, we affirm the Court of Appeals holding regarding Riehl's disparate treatment claim. We find that based on the evidence in the record, there is a genuine issue of material fact on whether JIB's articulated reasons for its actions are pretextual. A reasonable trier of fact could find discrimination was a substantial factor that motivated the actions. Finally, we defer all decisions pertaining to attorney fees to the trial court.

ALEXANDER, C.J., and JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and FAIRHURST, JJ., concur.