# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| VICTOR TERENCE WASHINGTON, | ) | No. 73847-0-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| GROUP HEALTH COOPERATIVE, | ) | UNPUBLISHED |
| | ) | |
| Respondent. | ) | FILED: May 30, 2017 |
| | ) | |

Cox, J. — Victor Washington appeals the judgment on a jury verdict for Group Health Cooperative concerning his claims of disability discrimination and failure to accommodate. The trial court did not abuse its discretion in denying his motion for a new trial. Washington failed to preserve for review his challenges to allegedly prejudicial comments by Group Health's counsel during opening statement, cross-examination, and closing. Accordingly, we do not further address those challenges. We affirm.

In April 2012, Victor Washington began working for Group Health Cooperative as a probationary employee. Washington's supervisor, Jim Sims, learned that Washington had changed his assigned work schedule when he noticed Washington leave early. Sims later spoke with Washington and

approved this change. There was conflicting evidence whether Washington explained to Sims that he needed the schedule adjustment due to his disabilities.

On August 8, 2012, Sims instructed Washington to return to his original work schedule. Washington responded that he had numerous upcoming doctor appointments and that he had heart issues. They did not agree on the schedule that would apply.

Sims and Washington resumed their discussion the next morning. Washington claims to have explained his medical conditions and the effect they had on him. There was evidence at trial that this conversation was "contentious." Sims "rescinded" Washington's changed work schedule. Later that morning, Washington e-mailed Sims and Sims's manager notifying them of his medical condition. Sims did not recall whether he read Washington's e-mail.

Later that day, Sims discussed Washington's potential termination with a Group Health human resources consultant. The next day, Sims terminated Washington's employment.

Washington commenced this suit against Group Health, alleging violations of Washington's Law against Discrimination (WLAD). A jury returned a verdict for Group Health on the only two claims that went to trial: failure to accommodate and disability discrimination. Washington then moved pro se for a new trial or reconsideration. He argued that the jury verdict was contrary to the evidence. He also argued that Group Health's counsel committed certain prejudicial misconduct during Washington's and a physician's cross-examination. The trial court denied Washington's motion and entered its judgment on the jury verdict.

Washington appeals.

## NEW TRIAL MOTION

Washington argues that the trial court abused its discretion by denying his motion for a new trial. We disagree.

"A strong policy favors the finality of judgments on the merits."[1] Under CR 59(a)(7), trial courts may order a new trial after a jury has returned its verdict where "there is no evidence or reasonable inference from the evidence to justify the verdict." If the appellant unsuccessfully moved for a new trial under this rule and argued that the verdict was contrary to the evidence, we determine whether sufficient evidence supports the verdict.[2]

Evidence is sufficient to support the verdict where it is substantial.[3] Substantial evidence is the "'quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'"[4] We must view the evidence in

---

[1] Harrell v. Dep't of Soc. and Health Servs., 170 Wn. App. 386, 408, 285 P.3d 159 (2012).

[2] Mears v. Bethel Sch. Dist. No. 403, 182 Wn. App. 919, 927, 332 P.3d 1077 (2014), review denied, 182 Wn.2d 1021 (2015).

[3] See id.

[4] McCleary v. State, 173 Wn.2d 477, 514, 269 P.3d 227 (2012) (quoting Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)).

favor of the nonmoving party.[5] Additionally, the jury makes credibility determinations, which we do not review.[6]

We review for abuse of discretion the trial court's denial of a motion for a new trial under CR 59(a)(7).[7]

Disability discrimination is at issue in this case. Under RCW 49.60.180, a disabled employee has a cause of action for certain types of discrimination. The employee may allege that the employer discriminated against him because of his disability.[8] The employee may also allege that the employer failed to accommodate his disability.[9] These were the only two claims that went to trial against Group Health.

### Disability Discrimination

Washington argues that the jury's verdict on his disability discrimination claim is contrary to the evidence. We disagree.

Under WLAD, an employer cannot "discriminate against any person in compensation or in other terms or conditions of employment because of . . . the presence of any sensory, mental, or physical disability."[10]

---

[5] Mears, 182 Wn. App. at 927.

[6] State v. Hart, 195 Wn. App. 449, 457, 381 P.3d 142 (2016), review denied, 187 Wn.2d 1011 (2017).

[7] Millies v. LandAmerica Transnation, 185 Wn.2d 302, 316, 372 P.3d 111 (2016).

[8] Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 145, 94 P.3d 930 (2004).

[9] Id.

[10] RCW 49.60.180(3); Riehl, 152 Wn.2d at 144-45.

4

Here, the trial court instructed the jury on the elements of a disability discrimination claim. According to those unchallenged instructions, Washington had the burden to prove the following factors:

> 1. That he has a disability;
> 2. That he is able to perform the essential functions of the job in question; and
> 3. That his disability was a substantial factor in Group Health Cooperative's decision to terminate him. Victor Washington does not have to prove that his disability was the only factor or the main factor in the decision. Nor does Victor Washington have to prove that he would have been retained but for his disability.[11]

The second element is not disputed on appeal.

### Disability

Washington argues that he is disabled. The record shows evidence of a disability.

RCW 49.60.040(7)(a) defines a disability as "the presence of a sensory, mental, or physical impairment that: (i) Is medically cognizable or diagnosable; or (ii) Exists as a record or history; or (iii) Is perceived to exist whether or not it exists in fact." Under the statute, "impairment[s]" include cardiovascular, respiratory, and psychological disorders.[12]

Here, the trial court gave the jury a disability instruction consistent with the statute. Dr. Ganesh Raghu, a physician who treated Washington, testified at trial as a defense witness. He testified, as an expert, that he had clinically diagnosed Washington with sarcoidosis. He also testified that he did not confirm this diagnosis. And a later biopsy failed to show objective evidence of this condition.

---

[11] Clerk's Papers at 644.

[12] RCW 49.60.040(7)(c)(i-ii).

We also note that Washington's medical records showed evidence of other medical conditions that could be classified as disabilities by the finder of fact.

We conclude there was, on this record, substantial evidence that Washington had a disability of sarcoidosis. This came in from Dr. Raghu, his treating physician and a defense witness at trial. Accordingly, Washington satisfied the first element of his disability discrimination claim.

Group Health argues that there was no evidence that Washington was disabled. The record, particularly the evidence provided at trial by its own expert witness, belies that argument. To the contrary, a jury could reasonably find, on this record, that Washington had a disability.

### Discrimination and Rebuttal

Washington argues that he satisfied his next burden: to show that his termination was discriminatory. We conclude that he failed in this burden.

The employee bears the initial burden of making a prima facie case of unlawful discrimination.[13] Specifically, Washington had the burden to show that his disability was a substantial factor motivating Group Health's decision to terminate his employment.[14] Then the burden shifts to the employer to present "evidence that the employment action was based on legitimate, nondiscriminatory reasons to rebut the presumption of discrimination."[15] The

---

[13] See Riehl, 152 Wn.2d at 150.

[14] Clerk's Papers at 644; see also Riehl, 152 Wn.2d at 149.

[15] See Riehl, 152 Wn.2d at 150.

employer's burden is one of production only.[16] If the employer satisfies its burden, the employee must show that the employer's reasons are pretext for discriminatory intent.[17]

At trial, Washington testified that he typically worked from 7:30 a.m. to 3:30 p.m. and asked Sims for an adjusted work schedule due to his medical conditions. Washington claims to have informed Sims of his difficulty staying asleep and his medical conditions.

Sims testified that Washington worked from 6:30 a.m. to 2:30 p.m. Sims became aware that Washington had unilaterally changed his schedule when he noticed Washington leave at 1:00 p.m. Sims asked Washington about this, and Washington explained that it was more convenient for him. Sims responded that it was "okay" and that they would "give it a try and see if this works." Sims testified that Washington did not identify any medical conditions or explain that he needed an adjusted schedule due to his disabilities.

On August 8, 2012, Sims instructed Washington to return to his original work schedule and leave at 2:30 p.m. Washington refused, responding that it was "unfair." When Sims asked for an explanation, Washington responded that he had numerous doctor appointments in the future and that he had heart issues. They could not agree on the schedule.

---

[16] Id.

[17] Id.

Sims and Washington resumed their discussion the next morning. Sims did not recall at trial whether Washington used the word "accommodation." But he did mention a heart related medical appointment.

Washington testified that he explained his upcoming medical appointments, his heart condition, and the effect his medical conditions had on him.

Sims explained that he needed Washington "to be available" for meetings. The conversation was allegedly "contentious." But Sims "rescinded" Washington's changed work schedule.

Later that morning, Washington e-mailed Sims and Adam Burton, Sims's manager, notifying them of a medical condition and appointment. Sims did not recall whether he read Washington's e-mail.

Sims later discussed Washington's termination with a Group Health human resources consultant. The next day, August 10, 2012, Sims gave Washington formal notice of his employment termination. The notice stated the following:

> • Argumentative nature in accepting your job title and role: You were hired as a network engineer. Shortly after your start you began complaining about why you were not a "senior" engineer. This discussion took three days to resolve.
> • Reluctance to conform to Group Health's change management processes: You didn't want to open change tickets which document any systems changes. As you know, this is standard business practice for our work. It took three days of discussion to convince you to accept this standard work practice.
> • Reluctance to work with peers to complete a formal review process: Doesn't want to participate in the regular review process that involves major system's changes.
> • Argumentative nature in working with leadership to accept the standard working hours: You refuse to work the schedule you

were hired to work. Shortly after starting your role, you changed your schedule and when asked by management to move back to your original schedule, you have refused[.]

Based on your continued poor work behavior during your probationary period, your employment with Group Health is hereby terminated effective the date identified in the first paragraph of this memo.[18]

The jury heard Sims's testimony explaining his reasons for terminating Washington's employment. Sims testified that he started to recognize "a pattern" and that Washington was "argumentative and . . . wasn't going . . . to try to actually compromise . . . ." Sims further testified that he did not terminate Washington's employment due to his disability.

Other employees also testified about their interaction with, and impression, of Washington. For example, Burton expressed his concern to Sims about Washington's absence from meetings and Burton's dissatisfaction with Washington's work hours. Burton felt that Washington was not "pulling his share of the work" and was argumentative.

The jury found in its special verdict form that Washington did not meet his burden of proving his disability discrimination claim. This record supports that factual determination.

The termination memorandum and Sims's testimony at trial provided substantial evidence to demonstrate Group Health's legitimate and nondiscriminatory reasons to rebut the presumption of discrimination.

---

[18] Report of Proceedings Vol. 2 (June 4, 2015) at 371-72; Trial Exhibit 10.

Washington argues that Sims treated him differently than other employees by "expecting him to have a standard schedule" while other employees did not. But Washington's schedule is irrelevant because it was not at issue in this case. The issue was whether Washington's disability was a substantial factor in Group Health's decision to terminate his employment, not readjust his schedule.

*Pretext*

Washington argues that he satisfied his burden of showing that Group Health's stated reasons were pretextual. We disagree.

An employee cannot establish that his employer's reasons are pretextual without evidence that the employer's articulated reason for its decision is "'unworthy of belief.'"[19] An employee may establish pretext if his employer's reasons "'(1) had no basis in fact, (2) were not really motivating factors for its decision, (3) were not temporally connected to the adverse employment action, or (4) were not motivating factors in employment decisions for other employees in the same circumstances.'"[20] The employee may also satisfy his burden by presenting sufficient evidence that discrimination was a substantial factor motivating the employer.[21]

---

[19] Brownfield v. City of Yakima, 178 Wn. App. 850, 874, 316 P.3d 520 (2014) (quoting Kuyper v. Dep't of Wildlife, 79 Wn. App. 732, 738, 904 P.2d 793 (1995)).

[20] Scrivener v. Clark Coll., 181 Wn.2d 439, 447, 334 P.3d 541 (2014) (quoting Scrivener v. Clark Coll., 176 Wn. App. 405, 412, 309 P.3d 613 (2013), rev'd on other grounds, Scrivener, 181 Wn.2d 439, 442).

[21] Id.

An employer's lack of documentation regarding the employee's poor performance may provide "circumstantial evidence that the proffered discharge justifications were fabricated post hoc."[22] But "'[s]peculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against.'"[23]

Here, Washington relies on the following facts to show that Group Health's stated reasons for terminating his employment were pretextual:

1) Washington did not receive a negative performance rating before his termination.

2) Sims did not provide documentation of any negative issues regarding Washington.

3) Sims allegedly knew of Washington's medical conditions when Washington requested an adjusted work schedule.

4) Sims began the process to terminate Washington's employment on the same day that Washington opposed his schedule readjustment.

5) Sims terminated Washington's employment shortly after receiving Washington's e-mail, which provided notification of his medical condition.

---

[22] Griffith v. Schnitzer Steel Indus., Inc., 128 Wn. App. 438, 450, 115 P.3d 1065 (2005).

[23] Hines v. Todd Pac. Shipyards Corp., 127 Wn. App. 356, 372, 112 P.3d 522 (2005) (quoting McKey v. Occidental Chem. Corp., 956 F. Supp. 1313, 1319 (S.D. Tex. 1997) (court order)).

11

Whether these facts demonstrate that Group Health's reasons are "'unworthy of belief'" is at issue.[24] The trial testimony provided context in determining whether substantial evidence supports the jury's verdict.

Sims testified that Washington did not mention his medical conditions prior to their meetings in August. Sims also discussed his evaluation of Washington's performance, stating that he "could have been more critical" of Washington's performance. But because Washington was a new employee, Sims tried to "coach" and "steer" him. Sims also explained that Washington was argumentative about his work hours during their two meetings, which occurred after Washington's performance evaluation. Additionally, Washington had missed meetings after the performance evaluation and seemed withdrawn from the team during the meetings he attended.

Although Sims terminated Washington's employment soon after they discussed Washington's schedule and medical appointments, Sims testified that he made the decision due to Washington's behavior during these discussions. The jury was entitled to accept this testimony as credible, a determination not subject to our review.

In light of all the evidence presented to the jury, substantial evidence supports the jury's verdict that Washington "[d]id [not] meet his burden of proving his disability-discrimination claim by a preponderance of the evidence." Thus, Washington did not carry his final burden of showing that Group Health's stated reasons for his discharge were pretextual.

---

[24] Brownfield, 178 Wn. App. at 874 (quoting Kuyper, 79 Wn. App. at 738).

Washington argues that the evidence "overwhelmingly showed that the termination was discriminatory" and that the jury did not have to choose between competing inferences. This simply is untrue in that the jury reasonably decided otherwise on the basis of substantial evidence.

*Failure to Accommodate*

Washington also argues that the jury's verdict on his accommodation claim is contrary to the evidence. We disagree.

Under WLAD, a disabled employee has a cause of action if he can demonstrate that his employer "failed to take steps reasonably necessary to accommodate the employee's disability."[25] "Employers have an affirmative obligation to reasonably accommodate the disability unless the employer can demonstrate that the accommodation would cause undue hardship to the employer's business."[26]

Here, the trial court instructed the jury on the elements of a failure to accommodate claim. According to those unchallenged instructions, Washington had the burden to prove the following factors:

> (1) That he had an impairment that is medically recognizable or diagnosable or exists as a record or history; and
> (2) That either
> > (a) he gave Group Health Cooperative notice of the impairment; or
> > (b) no notice was required to be given because Group Health Cooperative knew about his impairment; and

---

[25] Sommer v. Dep't of Soc. and Health Servs., 104 Wn. App. 160, 172-73, 15 P.3d 664 (2001); see also RCW 49.60.180(2).

[26] Id. at 173.

13

       (3) That the impairment had a substantially limiting effect on his ability to perform his job; and

       (4) That he would have been able to perform the essential functions of the job in question with reasonable accommodation; and

       (5) That Group Health Cooperative failed to reasonably accommodate the impairment.

    . . . .[27]

On appeal, the parties dispute whether Washington presented substantial evidence to establish the first and seconds factors. As discussed previously in this opinion, Dr. Raghu's testimony and the medical record exhibits constitute substantial evidence of Washington's disabilities. Thus, Washington satisfied the first element of this claim. But we conclude that Washington failed to present substantial evidence to establish the second element—that he gave Group Health notice of his disability.

To satisfy the notice factor, the employee must inform his employer that a disability requiring accommodation exists.[28] The employee is not required to explain the full nature and extent of his disability.[29]

"[T]he employer's duty to determine the nature and extent of the disability does not impose an investigatory duty to question any employee suspected of a disability."[30] An employer's duty to inquire into an employee's disability "arises

---

[27] Clerk's Papers at 643.

[28] Sommer, 104 Wn. App. at 173.

[29] Id.

[30] Goodman v. Boeing Co., 127 Wn.2d 401, 409, 899 P.2d 1265 (1995).

only after the employee has initiated the [accommodation] process by notice . . . ."[31]

Group Health provided substantial evidence that it lacked notice of Washington's disability. Sims testified that Washington did not mention his medical conditions prior to their first meeting in August. Additionally, Washington completed a "Demographic" questionnaire when he first started working for Group Health. The form had two disability questions and "yes" or "no" boxes for the employee to mark. The first question asked: "Are you an individual with a disability?" The second question asked: "Are you requiring a reasonable accommodation for a disability?" Washington did not mark any boxes.

At trial, Washington testified that he did not mark any boxes because he was "confused" and "did not know" how to complete the form. He explained that he informed a human resources employee about his medical conditions and disabilities. Washington told the employee that he was not requesting an accommodation at that point and did not believe he was "in need of that." The human resource employee allegedly told Washington to leave the boxes blank and that his supervisors would help him. The jury was entitled to decide whether this testimony was credible, a determination not subject to our review on appeal.

Washington also testified that he informed Sims of his medical conditions when he requested an adjusted work schedule. After Washington's meeting with Sims in August, Washington e-mailed Sims and Burton to notify them of a medical condition.

---

[31] Id.

Determining whether Group Health had notice of Washington's disability was a question of fact for the jury.[32] The jury was entitled to determine what evidence was credible and what was not. From the conflicting evidence at trial, the jury found that Washington failed to "meet his burden" to establish his claim. Because this record shows there was substantial evidence to support that decision, there is no basis to overturn the trial court's discretionary determination to deny the motion for a new trial.

Washington argues that Group Health had an ongoing duty to accommodate him after it terminated his employment. But as we have discussed, Washington failed to establish the notice element of his claim. Because he failed to do so, there simply was no ongoing duty of Group Health.

## COUNSEL MISCONDUCT

Washington argues that the trial court abused its discretion by denying his motion for a new trial due to Group Health's counsel's prejudicial misconduct. Because he failed to preserve this issue for review, we do not reach the substance of the claim.

CR 59(a)(2) permits a new trial due to the prevailing party's misconduct. Misconduct is distinct from merely aggressive advocacy.[33] "It is improper for

---

[32] See Martini v. Boeing Co., 88 Wn. App. 442, 458, 945 P.2d 248 (1997), aff'd, 137 Wn.2d 357, 971 P.2d 45 (1999).

[33] Miller v. Kenny, 180 Wn. App. 772, 814, 325 P.3d 278 (2014).

16

counsel to invite the jury to decide a case based on anything other than the evidence and the law, including appeals to sympathy, prejudice, and bias."[34]

But absent an objection to counsel's comments, this claim "cannot be raised for the first time in a motion for a new trial unless the misconduct is so flagrant that no instruction could have cured the prejudicial effect."[35]

Here, Washington moved for a new trial after the jury entered its verdict. He argued in that motion that Group Health's counsel committed several specific acts of misconduct. Washington specifically referred to counsel's cross-examination regarding Washington's prior bankruptcy filing and Washington's physician. The trial court denied Washington's motion for a new trial, concluding that counsel's cross-examinations were proper.

We also note that Washington did not contemporaneously object to the comments he challenged in his motion for a new trial. This is an additional reason to deny relief on appeal.

On appeal, Washington raises new arguments that he did not make below. He now focuses on counsel's questions regarding Washington's former employers and a prior termination. Washington also focuses on counsel's alleged misconduct during opening statement and closing argument. The record shows that Washington failed to preserve these specific claims because he did not contemporaneously object. And he fails to demonstrate that any of these comments were flagrant and ill-intentioned, obviating the need for

---

[34] M.R.B. v. Puyallup Sch. Dist., 169 Wn. App. 837, 858, 282 P.3d 1124 (2012).

[35] Sommer, 104 Wn. App. at 171.

contemporaneous objections. Thus, we will not consider these arguments any further.

## RETALIATION, WRONGFUL DISCHARGE, AND DAMAGES

Washington contends that Group Health retaliated against him. This claim is not before us because Washington voluntarily dismissed it with prejudice before trial.

Washington also argues that Group Health terminated his employment in violation of public policy. But Washington did not assert this claim in his complaint, and the record shows that he makes this argument for the first time on appeal. Thus, we do not further consider this argument.[36]

Lastly, Washington asserts that Group Health cannot limit his damages because it cannot show that it discovered evidence of Washington's wrongdoing after it terminated his employment. Because there is no liability, damages are irrelevant.

We affirm the judgment on the jury verdict and the denial of the motion for new trial.

_Cox, J._

WE CONCUR:

_Mann, J._

_Verellen_

---

[36] See RAP 2.5(a).