

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GLENDA KOENIG, an individual, | ) | No. 36395-3-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CITY OF QUINCY, a Washington | ) | |
| municipal corporation, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, C.J. — Glenda Koenig appeals a summary judgment order dismissing her disability accommodation claim against the City of Quincy. Because Ms. Koenig never notified the City of the need for a legally cognizable accommodation prior to her termination of employment, we affirm.

BACKGROUND

Glenda Koenig[1] was a longtime employee of the City of Quincy. Starting in April 2014, one of Ms. Koenig's coworkers, Brock Laughlin, began sexually harassing

_____

[1] During her employment with the City, Glenda Koenig was known by her married name, Glenda Stetner.

Ms. Koenig. Mr. Laughlin's misconduct was physical and verbal. A final incident

occurred on July 28, when Mr. Laughlin entered Ms. Koenig's office, sat down beside

her, and exposed his erect penis.

Mr. Laughlin's actions caused Ms. Koenig severe distress. She took several

days off work and then, on August 11, notified the City of Mr. Laughlin's misconduct.

On August 14, Mr. Laughlin was placed on leave. His employment with the City

terminated on October 1.

Ms. Koenig did not return to work after notifying the City of Mr. Laughlin's

behavior. Instead, she produced a medical note, dated August 15, 2014, indicating she

could not work for 30 days.

By October 8, Ms. Koenig still had not returned to work. On that date, the City

e-mailed Ms. Koenig's attorney stating it expected Ms. Koenig to return to work on

October 14.[2]

On October 13, Ms. Koenig's attorney responded to the City. The attorney stated

Ms. Koenig was "neither physically nor mentally able to return to work." Clerk's Papers

(CP) at 305. The attorney agreed to provide further information to the City regarding a

---

[2] All the City's communications to Ms. Koenig relevant to the issues on appeal were handled by its attorney.

possible return date as Ms. Koenig progressed in treatment. Attached to the attorney's

correspondence was an October 10 letter from Ms. Koenig's therapist. The letter stated,

in pertinent part:

> [Ms. Koenig] currently experiences active trauma symptoms due to the intensity and duration of the trauma she endured. Therefore, she is not yet able to return to work. Despite her progress in treatment, [Ms. Koenig]'s symptoms are triggered and worsen when she is faced with the idea of returning to the workplace. At this time, it is unclear when she will be healthy and ready to return to work.

*Id*. at 307.

The City responded to counsel the same day by asking "what, if anything, would

be required for [Ms. Koenig] to do her job." *Id*. at 308. It also posed a series of questions

regarding the nature of Ms. Koenig's condition and any need for accommodation.

Ms. Koenig's attorney responded to the City on October 20, explaining:

> [Ms. Koenig's] symptoms are triggered and worsen when she is faced with the idea of returning to the workplace. . . .
> At this point in [Ms. Koenig]'s treatment for the trauma she suffered on the City of Quincy property, there exists no other job offered by the City of Quincy which [Ms. Koenig] can perform. As her treatment progresses and her situation improves, we expect she will be able to return to work for the City. For now, she is simply too traumatized.
> . . . .
> I suggest the parties agree to engage in a monthly reporting wherein [Ms. Koenig] will provide the City with an update as to her condition and, when available, a propose date to return.

*Id*. at 323.

Correspondence continued between the parties' attorneys, with the City requesting

follow-up information from Ms. Koenig's therapist. Eventually, the therapist supplied a

second letter to the City. The letter, dated January 16, 2015, explained Ms. Koenig had

been diagnosed with posttraumatic stress disorder (PTSD) and it was unclear how long

her active symptoms would last. The therapist responded to the City's information

request, writing:

> In my opinion, the question at hand, whether or not [Ms. Koenig] can
> perform her job duties, is a misappropriation of the problem. [Ms.
> Koenig]'s symptoms stem from criminal behaviors that she was subjected to
> at the hands of a male co-worker, in the work environment. Given these
> circumstances, I believe a more fitting question is whether or not the City of
> Quincy has created safety for employees by implementing comprehensive
> anti-harassment/abuse training and response protocol that will be supported
> and enforced through a conscientious and routine human resources effort.
> Changes such as these will help to create a respectful work environment for
> all employees. This would assist those who have been harmed by sexual
> harassment and abuse by reducing fears of retaliation and/or additional
> harassment and abuse.
>     Until and unless such procedures are implemented and enforced, I
> cannot recommend that [Ms. Koenig] return to work for the City of Quincy
> in any capacity, regardless of accommodations. Her symptoms will continue
> to present so long as she believes she is not working in a safe environment.

*Id*. at 349.

On January 26, the City responded to the therapist and included information

about its existing anti-harassment/abuse protocol. The City advised the therapist it had

a "robust" protocol that would be available to Ms. Koenig upon her return to work.

*Id.* at 321. Given the existence of the protocol, the City reiterated its request for answers to questions regarding Ms. Koenig's condition and any reasonable accommodation requirements. Ms. Koenig's therapist never responded.

Approximately two months after sending the anti-harassment/abuse protocol and information request to Ms. Koenig's therapist, the City contacted Ms. Koenig's attorney and requested an update. Ms. Koenig's attorney responded with a list of 11 questions, including whether Ms. Koenig would be able to work in a different building and whether there had been any changes to the City's sexual harassment policy. In response, the City indicated Ms. Koenig was expected to work in the same building as before and that the City had retained its existing sexual harassment policy. After answering the questions posed by Ms. Koenig's attorney the City indicated Ms. Koenig must provide, no later than 5:00 p.m. on April 8, 2015, an estimated date for her return to work.

On April 8, Ms. Koenig's attorney sent a letter to the City, stating as follows:

> In light of the events of last summer, [Ms. Koenig] hoped that the City would enact changes to its sexual harassment policies, procedures, training, and enforcement. Unfortunately, the City's answers to [Ms. Koenig]'s questions make clear that the City has chosen to maintain the status quo—a status unacceptable to [Ms. Koenig] and detrimental to her recovery.
> [Ms. Koenig] continues to undergo treatment for her condition, which is improving. However, even the thought of returning to work for the City under the same conditions that existed at the time she took leave regresses her condition. If her condition sufficiently improves, or should the

> City take affirmative measures to strengthen its sexual harassment policies, procedures, training and enforcement, a fixed date for [Ms. Koenig's] return can be set. But until that time, it is not possible to provide the City with an expected date for [Ms. Koenig]'s return.

*Id*. at 346.

On April 9, 2015, the City sent a letter to Ms. Koenig, terminating her employment. The City indicated that because Ms. Koenig had failed to provide "meaningful information" regarding the possibility of "any reasonable accommodations" or a projected return date, Ms. Koenig's position would be filled by someone else. *Id*. at 348. The City did advise that it would continue to send Ms. Koenig information regarding future job openings.

In August 2015, Ms. Koenig filed suit against the City in federal court. Ms. Koenig alleged breach of contract and violations of state and federal antidiscrimination law. That court ultimately dismissed Ms. Koenig's federal law claims on summary judgment and declined adjudication of the state law claims.

In August 2017, after dismissal of her federal claims, Ms. Koenig sued the City in Grant County Superior Court for violations of Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, and breach of contract. Ms. Koenig alleged the City violated WLAD by failing to offer reasonable accommodations for her PTSD. She also claimed that the manner in which the City terminated her employment constituted a

breach of contract. The trial court eventually entered a summary judgment order in favor

of the City. Ms. Koenig appeals, challenging the superior court's dismissal of her WLAD

accommodation claim.

ANALYSIS

WLAD requires employers to reasonably accommodate disabled employees so that

they may carry out their job duties. RCW 49.60.180; WAC 162-22-025. An employee

asserting a failure to accommodate claim must prove four elements: (1) the employee had

a disability that substantially limited the employee's ability to perform the job, (2) the

employee was qualified to perform the essential job functions, (3) the employee notified

the employer of the disability and limitations, and (4) upon notice, the employer failed

to affirmatively adopt available measures that were medically necessary to accommodate

the disability. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145, 94 P.3d 930 (2004),

*abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*,

189Wn.2d 516, 404 P.3d 464 (2017). The fourth element requires the employee to prove

that a reasonable accommodation was both available and medically necessary. *Pulcino*

*v. Federal Express. Corp.*, 141 Wn.2d 629, 643, 9 P.3d 787 (2000), *overruled in part*

*on other grounds by McClarty v. Totem Electric*, 157 Wn.2d 214, 137 P.3d 844 (2006);

*Roeber v. Dowty Aerospace Yakima*, 116 Wn. App. 127, 141, 64 P.3d 691 (2003). If the

employee establishes the foregoing elements, the burden "shifts to the employer to show that the [employee's] proposed solution is not feasible." *Pulcino*, 141 Wn.2d at 643.

Implicit in the foregoing elements is the expectation that employee and employer alike will share "information to achieve the best match between the employee's capabilities and available positions." *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408-09, 899 P.2d 1265 (1995). An employee must communicate an accommodation request in a timely manner so that the employer can take action. "Providing information to the employer only after being discharged does not satisfy this duty; at this point, the opportunity for the employer to [accommodate] has passed." *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 783, 249 P.3d 1044 (2011).

Ms. Koenig claims that the City violated WLAD by failing to accommodate her PTSD in two ways: (1) relocating her work station and (2) revamping the City's sexual harassment policy. Reviewing the record de novo, *McClarty*, 157 Wn.2d at 220, we disagree.

Ms. Koenig's workstation relocation claim fails because she never adequately requested this type of accommodation. Prior to termination, Ms. Koenig never notified the City that a different workstation was necessary for her return to work. Although in a letter dated April 1, 2015, Ms. Koenig's attorney asked whether Ms. Koenig would be able to

work in a different building, he did not state that this detail was a sticking point. Nor did

he link Ms. Koenig's workstation location to her PTSD. Instead, both Ms. Koenig's

attorney and her therapist were clear the circumstance preventing Ms. Koenig's return to

employment with the City was the perceived inadequacy of the City's anti-

harassment/abuse policy.[3]

Ms. Koenig's claim regarding the City's anti-harassment/abuse policy fails as a

matter of law. An accommodation is a workplace adaptation designed to produce equity

between disabled and nondisabled persons. WAC 162-22-065(1)(c) ("Reasonable

accommodation means measures that . . . [e]nable the enjoyment of equal benefits,

privileges, or terms and conditions of employment."). To be effective, an accommodation

must be individualized to meet the needs of a specific disabled person. *See, e.g.*,

WAC 162-22-065(2) (An accommodation may include adjustments to an employee's

job duty, schedule, or setting.). Personnel policies—such as an anti-harassment/abuse

---

[3] In her January 16, 2015, letter, Ms. Koenig's therapist wrote she could not recommend Ms. Koenig return to work "[u]ntil and unless [improved anti-harassment procedures] are implemented and enforced . . . *regardless of accommodations*." CP at 349 (emphasis added). Ms. Koenig's attorney further explained on April 8, 2015, that Ms. Koenig could return to work "[i]f her condition sufficiently improves, or should the City take affirmative measures to strengthen its sexual harassment policies, procedures, training and enforcement. . . . But until that time, it is not possible to provide the City with an expected date for [Ms. Koenig]'s return." *Id*. at 346.

policy—stand in contrast. A policy must be written to address the needs of all employees, including those with adverse interests. An accommodation may sometimes require an exception to a general policy (e.g., a variation on schedule requirements). But it cannot force a change to a generally-applicable policy when there are other countervailing concerns. Given the fundamental differences between a policy change and an accommodation, Ms. Koenig's demand for improvements to the City's anti-harassment/abuse policy as an accommodation for her PTSD was legally untenable. *Cf. Pulcino*, 141 Wn.2d at 644 (Requests that make fundamental alterations to job structure or job functions are unreasonable as a matter of law.); *Snyder v. Medical Serv. Corp. of E. Wash.*, 98 Wn. App. 315, 327-28, 988 P.2d 1023 (1999) (Courts are "reluctant" to order changes that require restructuring of the workplace.).[4] The trial court's order on summary judgment was therefore appropriate.

## CONCLUSION

The order on summary judgment is affirmed. Ms. Koenig's motion to strike the City's supplemental designation of excerpts of record is denied as moot. Her requests for

---

[4] To the extent Ms. Koenig complains the City's anti-harassment/abuse policy failed to protect her from Mr. Laughlin's unwelcome misconduct, her recourse was a sex discrimination claim, such as the one brought in federal court, not a claim based on failure to accommodate.

No. 36395-3-III
*Koenig v. City of Quincy*

attorney fees are also denied.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

11