## NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 1, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 1, 2022

*Erin L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CARL W. SCHWARTZ and SHERRY SCHWARTZ, individually and the marital community composed thereof, | NO. 99359-9 |
| Respondent, | |
| v. | EN BANC |
| KING COUNTY, a local government entity and municipal corporation within the State of Washington, | |
| Petitioner. | Filed: <u>September 1, 2022</u> |

STEPHENS, J.—Carl Schwartz[1] brought this suit against King County (County) for the catastrophic injuries he suffered when he collided with a bollard the County installed on the Green River Trail. The County moved for summary judgment dismissal, arguing that Washington's recreational use immunity statute, RCW 4.24.210, precludes liability and that the statute's exception for known dangerous artificial latent conditions does not apply. The trial court agreed and

---

[1] Carl's wife, Sherry Schwartz, is also a party to this suit with a claim for loss of consortium.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

granted summary judgment for the County. The Court of Appeals disagreed and reversed the summary dismissal.

We affirm the Court of Appeals. Schwartz has presented evidence showing a genuine issue of material fact as to whether the bollard is a known dangerous artificial latent condition, so the trial court erred by granting summary judgment for the County. We remand to the trial court for further proceedings in light of this contested question of fact. [2]

FACTS AND PROCEDURAL HISTORY

In March 2017, Schwartz was grievously injured when he collided with a bollard while riding his bicycle on the Green River Trail (GRT). A "bollard" is a removable metal post designed to prevent motorized vehicles from intruding onto paths and trails. The force of the collision sheared Schwartz's carbon frame bicycle in two and threw Schwartz to the ground headfirst. Despite wearing a helmet, Schwartz suffered a serious injury to his upper spinal cord. Schwartz now lives with quadriplegia and relies on a ventilator to breathe.

The bollard Schwartz struck is one of hundreds installed by the County on the GRT and other parts of the County's Regional Transportation System (RTS). This

---

[2] Because the parties' arguments primarily address whether the exception to Washington's recreational use immunity statute applies, we assume without deciding that the portion of the Green River Trail at issue here is subject to recreational use immunity.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

particular bollard was placed in the middle of the trail, painted white, and had a small red reflector attached to it. Years before Schwartz's crash, an unknown person or persons used fluorescent paint to write "POST" and other warnings on the pavement near the bollard to caution trail users as they approached. But these conspicuous warnings have since faded.

On the morning of Schwartz's collision, the weather was wet and overcast. Experts testified by deposition that in those conditions, a normal bicyclist or other trail user likely could not see the bollard as they approached it. Clerk's Papers (CP) at 1067, 1082-83, 1088. One expert detailed how the contrast between the bollard and the pavement of the trail shifted dramatically on overcast days:

> In a period of about two minutes the appearance of the bollard went from being dark against a lighter background, through zero contrast and to being light against a dark background. The contrast of the majority of the north exposed surface went to and through zero. This contrast change occurs remarkably fast. As the contrast approached nearly zero . . . the bollard was not readily apparent to a normal observer unless you knew from previous experience or memory that a bollard had been installed at this location. These changes occurred several times while I was at the site. I captured the changes on my video coverage.

CP at 1083. The expert concluded that "[t]he bollard hit by Mr. Schwartz was completely inconspicuous under the weather and lighting conditions that existed at the scene at the time." CP at 1088.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

A former employee of the County's Parks and Recreation Department agreed with the experts' conclusions. She recalled that someone had painted the "POST" warning for this bollard during her time at the County, and she testified that this "was the only bollard that [she knew] about that was ever marked by someone to warn users of the bollard's existence." CP at 1117. "This to [her] meant that the bollard was difficult to see by people using that portion of the trail," so she "considered the bollard to be very dangerous to trail users." *Id.* Despite this incident, the "County did nothing to warn trail users about the bollard" after the painted warnings faded. *Id.*

In October 2017, Schwartz filed this suit against the County to recover damages for his injuries. The County argues that because it has opened the GRT to the public for recreational purposes, Washington's recreational use immunity statute bars Schwartz's claims. Schwartz moved for partial summary judgment to strike that defense, and the superior court denied the motion without prejudice pending this court's decision in *Lockner v. Pierce County*, 190 Wn.2d 526, 415 P.3d 246 (2018). After we issued our decision, the County filed its own motion for summary judgment arguing that the recreational use immunity statute applies and that the statutory exception for known dangerous artificial latent conditions does not. The superior court granted the County's motion, and Schwartz timely appealed.

4

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

A divided panel of the Court of Appeals reversed the superior court's order granting summary judgment of dismissal, holding that Schwartz had established a genuine issue of material fact as to whether the bollard constitutes a known dangerous artificial latent condition. *Schwartz v. King County*, 14 Wn. App. 2d 915, 941, 474 P.3d 1092 (2020). The County petitioned this court for review, which we granted. We also accepted amici briefs from the Cascade Bicycle Club, the Washington Cities Insurance Authority, the Washington State Association for Justice Foundation, and the Washington State Association of Municipal Attorneys et al.

ANALYSIS

Summary judgment is appropriate only when a trial would be useless; there must be no genuine issues of material fact and the moving party must be entitled to judgment as a matter of law. CR 56(c). We review a trial court's order granting summary judgment de novo. *Lockner*, 190 Wn.2d at 530 (citing *Campbell v. Ticor Title Ins. Co.*, 166 Wn.2d 466, 470, 209 P.3d 859 (2009)). When conducting this review, "we consider all the facts and make all reasonable factual inferences in the light most favorable to the nonmoving party." *Id.* at 530 (citing *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989)).

5

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

Viewing the evidence in the light most favorable to Schwartz, we conclude that there are genuine issues of material fact as to whether the bollard was a known dangerous artificial latent condition. The County may therefore be liable for Schwartz's injuries under the exception to Washington's recreational use immunity statute. Accordingly, we reverse the trial court's order granting summary judgment and remand for further proceedings.

I. The County Is Not Entitled to Summary Judgment Because Schwartz Has Identified Genuine Issues of Material Fact under the Exception to Washington's Recreational Use Immunity Statute

Local governments like the County are generally liable for injuries sustained on their property to the same extent as any other landowner. RCW 4.96.010. "At common law, a landowner's duty depended on the plaintiff's status as an invitee, a licensee, or a trespasser." *Camicia v. Howard S. Wright Constr. Co.*, 179 Wn.2d 684, 694, 317 P.3d 987 (2014) (citing *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994)). In 1966, this court broadened the invitee classification "to include the '"public invitee,"' defined as one '"invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public."'" *Id.* at 694-95 (quoting *McKinnon v. Wash. Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 650-51, 414 P.2d 773 (1966) (quoting RESTATEMENT (SECOND) OF TORTS § 332 (AM. L. INST. 1965))).

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

The year after this court recognized public purpose invitees, the legislature enacted Washington's recreational use immunity statute "to encourage owners of land to make available land and water areas to the public for recreational purposes by limiting their liability." LAWS OF 1967, ch. 216, § 1. "To accomplish this goal, our legislature changed the common law by statute, altering an entrant's status from that of a trespasser, licensee, or invitee to a new statutory classification of recreational user." *Lockner*, 190 Wn.2d at 532 (citing *Davis v. State*, 102 Wn. App. 177, 184, 6 P.3d 1191 (2000), *aff'd*, 144 Wn.2d 612, 30 P.3d 460 (2001)); *see also Camicia*, 179 Wn.2d at 695 ("[T]he legislature carved out an exception to the common law 'public purpose' invitee doctrine by exempting a particular 'public purpose'—outdoor recreation."). Specifically, Washington's recreational use immunity statute provides that "any public or private landowners . . . in lawful possession and control of any lands . . . who allow members of the public to use [their lands] for the purposes of outdoor recreation . . . shall not be liable for unintentional injuries to such users." RCW 4.24.210(1). Recreational use immunity is an affirmative defense, so the landowner bears the burden of proving entitlement to that immunity. *Camicia*, 179 Wn.2d at 693.

Although Washington's recreational use immunity statute generally shields owners of recreational land from premises liability, the immunity it grants is not

7

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

limitless. Under RCW 4.24.210(4)(a), a recreational landowner remains liable "for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted." "[A]ll four terms (known, dangerous, artificial, latent) modify 'condition,' not one another," and so all must be present for the exception to apply. *Jewels v. City of Bellingham*, 183 Wn.2d 388, 396, 353 P.3d 204 (2015) (citing *Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 46, 846 P.2d 522 (1993)). Therefore, to prove that the statutory exception does not apply, a landowner need show that the injury-causing condition lacks only one of those characteristics.

Here, the County acknowledges that the bollard is an artificial condition that is known to the County and for which no warning signs have been conspicuously posted. At issue is whether the bollard is dangerous and latent within the meaning of RCW 4.24.210(4)(a).

A. "Dangerous" and "Latent" Retain Their Common Law Meanings in Washington's Recreational Use Immunity Statute

To determine whether the bollard may be dangerous and latent within the meaning of Washington's recreational use immunity statute, we must first determine what the legislature meant by those terms. When interpreting statutory language, our "fundamental objective is to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

8

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

When the legislature does not define a term, we generally give that term "its plain and ordinary meaning." *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 921, 969 P.2d 75 (1998) (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992)). "Courts often look to standard dictionaries to determine the ordinary meaning of words." *Ravenscroft*, 136 Wn.2d at 922 (citing *Gerberding v. Munro*, 134 Wn.2d 188, 199, 949 P.2d 1366 (1998); *Wash. State Coal. for Homeless v. Dep't of Soc. & Health Servs.*, 133 Wn.2d 894, 905, 949 P.2d 1291 (1997)). But when "the legislature uses a term well known to the common law, it is presumed that the legislature intended it to mean what it was understood to mean at common law." *State v. Dixon*, 78 Wn.2d 796, 804, 479 P.2d 931 (1971) (citing *Irwin v. Rogers*, 91 Wn. 284, 287, 157 P. 690 (1916)).

The legislature did not define any of the terms in Washington's recreational use immunity statute. RCW 4.24.210. We therefore presume the legislature intended that any terms "well known to the common law" retain their common law meanings. *Dixon*, 78 Wn.2d at 804. Relevant here, we presume the legislature intended "dangerous" and "latent" within the recreational use immunity statute to mean precisely what those terms mean at common law.[3]

---

[3] We take this opportunity to clarify some confusion arising from the court's prior use of a dictionary definition to define the statutory term "artificial," even though that term is well known to the common law. *See Ravenscroft*, 136 Wn.2d at 922 (quoting WEBSTER'S

9

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

> i.      "Dangerous"

At common law, a "dangerous" condition is one "that poses an unreasonable risk of harm." *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 609, 774 P.2d 1255 (1989) (citing WILLIAM L. PROSSER, HANDBOOK ON THE LAW OF TORTS § 31 (4th ed. 1971)), *abrogated on other grounds by Jewels v. City of Bellingham*, 183 Wn.2d 388, 353 P.3d 204; *see also* RESTATEMENT (SECOND) OF TORTS § 342 (describing a "dangerous condition" as one that "involves an unreasonable risk of harm"). A condition is therefore dangerous for the purposes of Washington's recreational use immunity statute if it imposes an unreasonable risk of harm. *Dixon*, 78 Wn.2d at 804.

> ii.      "Latent"

Just as RCW 4.24.210(4)(a)'s "dangerous" element parallels the *Restatement*'s language about an "unreasonable risk of harm," the "latent" element parallels the *Restatement*'s language that the landowner "should expect that

---

THIRD INTERNATIONAL DICTIONARY 124 (1986)). The dictionary definition cited in *Ravenscroft* is consistent with the term's meaning at common law, so the error did not affect the court's analysis or the result. *Compare* WEBSTER'S, *supra*, at 124 (defining "artificial" as "formed or established by man's efforts, not by nature"), *with* RESTATEMENT (SECOND) OF TORTS § 335(a)(i) (describing an "artificial condition" as "one which the possessor has created or maintains"). Therefore, *Ravenscroft* remains good law and should be understood not as adopting a dictionary definition but, instead, reinforcing the common law meaning of the term "artificial" as used in the recreational use immunity statute. *See Dixon*, 78 Wn.2d at 804.

[invitees] will not discover or realize the danger, or will fail to protect themselves against it." RESTATEMENT (SECOND) OF TORTS § 343(b). At common law, latency concerns whether the landowner can foresee that an invitee using the land within "the purposes of the invitation" will not discover or be able to protect themselves from the dangerous condition. *Id.* cmt. b. A condition is therefore latent for the purposes of Washington's recreational use immunity statute if recreational users will not be reasonably able to discover or protect themselves from that condition while engaged in recreational use of the land. *Dixon*, 78 Wn.2d at 804; *see Jewels*, 183 Wn.2d at 398 ("An injury-causing condition is 'latent' if it is 'not readily apparent to the recreational user.'" (quoting *Van Dinter*, 121 Wn.2d at 45)).

This meaning of latency aligns with the "dispositive question" this court has articulated to guide our analysis of whether a condition is latent within the meaning of Washington's recreational use immunity statute: "The dispositive question is whether the condition is readily apparent to the general class of recreational users." *Jewels*, 183 Wn.2d at 398 (citing *Tennyson v. Plum Creek Timber Co.*, 73 Wn. App. 550, 555-56, 872 P.2d 524 (1994)). This question is dispositive because a landowner can expect that the general class of recreational users will be able to discover and protect themselves from a condition that is readily apparent to them. This requires the landowner to foresee whether recreational users will be able to perceive the

11

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

dangerous condition, which in turn requires the landowner to consider what recreational users are likely to be doing when they encounter the dangerous condition. Consistent with the *Restatement*, the dispositive question we articulated in *Jewels* strongly suggests that the class of recreational users whose perspective matters to the latency inquiry is the class of recreational users engaged in a typical recreational use of the land—i.e., within "the purposes of the invitation." RESTATEMENT (SECOND) OF TORTS § 343 cmt. b.

The dissent insists that *Jewels* more narrowly defined latency by stating that "if an ordinary recreational user *standing near* the injury-causing condition could see it by observation . . . the condition is obvious (not latent) as a matter of law." *Jewels*, 183 Wn.2d at 400 (emphasis added). It is true that the court articulated latency in terms of what a person could observe from this stationary vantage point, but stating the legal test in this way is inconsistent with the dispositive question the court articulated: "whether the condition is readily apparent to the general class of recreational users." *Id*. at 398. Moreover, a "standing near" test does not account for how "recreational users" generally encounter conditions on the land. Bicyclists do not stand in one place, they ride; skateboarders do not stand in one place, they skateboard; skiers ski; runners run; swimmers swim; and so on. A condition is latent if recreational users are not reasonably able to discover or protect themselves from

12

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

that condition while engaged in recreational use of the land. *Dixon*, 78 Wn.2d at 804.

Recognizing the inconsistency in *Jewels*'s articulation of the test for latency, our obligation is to acknowledge the problem and resolve the tension or course correct. *See, e.g.*, *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 597, 316 P.3d 1007 (2014); *In re Pers. Restraint of Flint*, 174 Wn.2d 539, 545 n.3, 277 P.3d 657 (2012). Contrary to the dissent's claim, our decision today does not require the court to overrule *Jewels*; rather, we disavow statements in that opinion that suggest a new "standing near" test because such a test is incompatible with the common law test of what is readily apparent to the general class of recreational users. The proper focus of the common law test regarding latency is on whether the injury-causing condition is readily apparent to the general class of recreational users, and this requires consideration of the condition from the typical recreational user's perspective. *See Dixon*, 78 Wn.2d at 804; RESTATEMENT (SECOND) OF TORTS § 343.

### B. Schwartz Has Established a Genuine Issue of Material Fact as to Whether the Bollard Was Dangerous

When considering a motion for summary judgment, "we consider all the facts and make all reasonable factual inferences in the light most favorable to the nonmoving party." *Lockner*, 190 Wn.2d at 530 (citing *Young*, 112 Wn.2d at 226). Viewing the facts and reasonable inferences in the light most favorable to Schwartz,

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

we conclude there is a genuine question of material fact as to whether the bollard posed an unreasonable risk of harm.

First, Schwartz presented direct evidence of the danger posed by the bollard he struck. We agree with the Court of Appeals that "the very nature of Schwartz's injury indicates that the bollard is dangerous." *Schwartz*, 14 Wn. App. 2d at 938. That the bollard could cause such an injury—despite Schwartz's experience as a cyclist and use of a helmet—strongly suggests that the bollard poses an unreasonable risk of harm to recreational users on the GRT. Schwartz also presented testimony from a former County parks and recreation employee, who "considered the bollard [at issue here] to be very dangerous to trail users." CP at 1117.

Next, Schwartz presented evidence giving rise to a reasonable inference that the bollard was dangerous. Schwartz demonstrated that an unknown person had previously used fluorescent paint to write "POST" near the bollard to caution trail users as they approached the bollard. A reasonable jury could infer from this evidence that at least one other person had struck and been injured by the bollard, and that their injury was serious enough to compel them to warn others. Similarly, Schwartz presented evidence that other people had been injured by other bollards on the RTS and had complained to the County about their injuries, suggesting this bollard posed a similarly unreasonable risk of harm. Schwartz also showed that the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Federal Highway Administration recognizes the danger of bollards generally and warns that "[e]ven 'properly' installed bollards constitute a serious and potentially fatal safety hazard to unwary trail users." CP at 1097. This evidence would allow a reasonable jury to conclude that the bollard Schwartz struck presented these same unreasonable risks of harm.

We hold that Schwartz has established a genuine issue of material fact as to whether the bollard was dangerous within the meaning of Washington's recreational use immunity statute.

C. Schwartz Has Established a Genuine Issue of Material Fact as to Whether the Bollard Was Latent

Schwartz also established a genuine question of material fact as to whether recreational users would be reasonably able to discover or protect themselves from injury caused by the bollard while engaged in recreational use of the GRT.

Schwartz presented unrebutted expert testimony "that the GRT bollard was not readily apparent to someone coming in contact with it in certain conditions" and "was likely not capable of being physically seen at the time [of Schwartz's collision] by a normal user of the trail." CP at 1087, 1067. More specifically, an expert observed that "[i]n a period of about two minutes the appearance of the bollard went from being dark against a lighter background, through zero contrast and to being

15

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

light against a dark background. . . . As the contrast approached nearly zero, the bollard became far less noticeable and . . . was not readily apparent to a normal observer unless you knew from previous experience or memory that a bollard had been installed at this location." CP at 1083. The expert concluded "the bollard hit by Mr. Schwartz was completely inconspicuous under the weather and lighting conditions that existed at the scene at the time." CP at 1088.

This testimony raises a genuine question of material fact as to whether recreational users would be reasonably able to discover or protect themselves from the bollard while engaged in typical recreational use of the GRT. At the very least, it cannot be said as a matter of law that a condition that is functionally invisible to the general class of recreational users is not latent within the meaning of the recreational use immunity statute. Accordingly, we hold that Schwartz has presented a genuine issue of material fact as to whether the bollard is latent.

Based on the evidence presented, and viewing all facts and reasonable inferences favorably to Schwartz, summary judgment is not appropriate.

CONCLUSION

Washington's recreational use immunity statute uses terms that are well known to the common law and retain their common law definitions. Under these definitions, Schwartz has presented genuine issues of material fact as to whether the

16

*Schwartz, et al. v King County*, No. 99359-9
(Stephens, J.)

County's bollard is a known dangerous artificial latent condition. The matter should not have been resolved on summary judgment. We vacate the trial court's order granting summary judgment to the County and remand to the trial court for further proceedings consistent with this opinion.

_____
Stephens, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____

_____

_____

_____
Montoya-Lewis, J.

_____

_____
Whitener, J.

17

*Schwartz v. King County*, No. 99359-9
(Owens, J., dissenting)

No. 99359-9

OWENS, J. (dissenting) — RCW 4.24.210 provides immunity from liability to those who open their land to the public for recreational purposes. Recreational use immunity will not apply, however, if the recreational user is injured by a "known dangerous artificial latent condition" on the land that has no conspicuously posted warning signs. RCW 4.24.210(4)(a). All four of the characteristics must be present in the injury-causing condition for the exception to apply. Because the majority improperly frames the latency test we articulated in *Jewels v. City of Bellingham*, 183 Wn.2d 388, 353 P.3d 204 (2015), to essentially overrule this court's recent precedent without adequate justification, I respectfully dissent.

ANALYSIS

Statutory interpretation is a question of law we review de novo. *Jewels*, 183 Wn.2d at 394 (citing *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007)). We also review a grant of summary judgment de novo. *Lockner v. Pierce County*, 190 Wn.2d 526, 530, 415 P.3d 246 (2018). Summary

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*. We view all reasonable facts and inferences in favor of the nonmoving party. *Id*.

RCW 4.24.210 is Washington's recreational land use statute. *Jewels*, 183 Wn.2d at 394. Passed in 1967, it encourages landowners to open their lands to the recreating public by modifying the common law duty owed to invitees, licensees, and trespassers. *Davis v. State*, 144 Wn.2d 612, 615-16, 30 P.3d 460 (2001). Under this statute, "landowners who open their land to the public for recreational purposes, free of charge, are generally not liable for unintentional injuries to such users." *Jewels*, 183 Wn.2d at 395.

An injured party may overcome this immunity by showing "'the injuries were sustained by reason of a known dangerous artificial latent condition for which no warning signs were posted.'" *Id.* (quoting *Davis*, 144 Wn.2d at 616). "All four elements (known, dangerous, artificial, latent) must be present in the injury-causing condition for liability to attach to the landowner." *Id*. The terms "known," "dangerous," "artificial," and "latent" modify the term "condition," and not each other. *Id*. at 391. The majority correctly notes that "to prove the statutory exception does not apply, a landowner need show that the injury-causing condition lacks only one of those characteristics." Majority at 8. The majority is wrong, however, to claim there are genuine issues of material fact as to the latency of the bollard. Under a

2

*Schwartz v. King County*, No. 99359-9
(Owens, J., dissenting)

faithful reading of *Jewels*, the bollard is obvious, not latent, and recreational immunity

should apply as a matter of law.

> a. Jewels *Authoritatively Settled the Meaning of "Latent"*

We most recently interpreted the known dangerous artificial latent condition

exception in *Jewels*, which has facts analogous to this case. In *Jewels*, the plaintiff

bicyclist hit a berm while trying to avoid a speed bump on a path in a park maintained

by the city of Bellingham. *Jewels*, 183 Wn.2d at 391. A berm is a water diverter, and

the one at issue in *Jewels* was made of asphalt and about two inches high. *Id*. at 391-

92. Jewels thought he was cycling onto "'bare, flat pavement'" and was shocked

when he hit the berm and was injured. *Id*. (quoting Clerk's Papers (CP) at 92). The

city claimed recreational use immunity. *Id*. at 392. Jewels claimed the berm was a

latent condition and therefore the city was not entitled to immunity. *Id*.

We held in *Jewels* that to determine latency, "[t]he dispositive question is

whether the condition is readily apparent to the general class of recreational users, not

whether one user might fail to discover it." *Id*. at 398 (citing *Tennyson v. Plum Creek

Timber Co.*, 73 Wn. App. 550, 555-56, 872 P.2d 524 (1994)). The majority halts its

analysis there, but this is an incomplete reading of *Jewels*. *See* majority at 11-12.

After analyzing our past decisions and those of the Court of Appeals, the *Jewels* court

concluded that "if an ordinary recreational user standing near the injury-causing

condition could see it by observation, without the need to uncover or manipulate the

3

*Schwartz v. King County*, No. 99359-9
(Owens, J., dissenting)

surrounding area, the condition is obvious (not latent) as a matter of law." *Id*. at 400.

Under the same standard of review we are applying in this case, the *Jewels* court

concluded that the photographs of the berm showed the condition was obvious and not

latent and affirmed dismissal of the plaintiff's claims on summary judgment.

The majority portrays the *Jewels* latency test as "suggest[ing]" a condition

cannot be latent if it is visible by a person standing near it, but actually requiring the

court to examine if the condition was apparent to a general class of recreational users

"when engaged in a typical recreational use." Majority at 12. This analysis mirrors

the dissent in *Jewels*, which a majority of this court rejected. *See Jewels*, 183 Wn.2d

at 402 (Gordon McCloud, J., dissenting) (criticizing majority for using "an overly

restrictive definition of the 'general class of recreational users'" because it excluded

moving cyclists like the plaintiff). The majority claims that using the viewpoint of a

recreational user standing near the injury-causing condition was appropriate for

*Jewels* but is somehow inappropriate in this case even though both cases involved

bicyclists hitting raised objects on paths in public parks.

As we stated in *Jewels*, the dispositive question is whether the condition is

apparent to the class of general recreational users, not a single cyclist. *Id.* at 398

(citing *Tennyson*, 73 Wn. App. at 555-56). The proper way to apply the *Jewels*

latency test is to ask whether the general recreational user standing near the injury-

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

causing condition could see it. The majority's attempts at factual differentiation

should not change the legal test.

> b. *The Trial Court Correctly Applied* Jewels *and Granted Summary Judgment to the County*

Applying the *Jewels* latency test, Schwartz's evidence attempting to prove the

bollard's latency is less convincing than the evidence we held insufficient in *Jewels*,

even when viewed in the light most favorable to Schwartz. Expert witness James

Sobek, PE, surveyed the bollard when weather conditions were similar to the day of

the accident. CP at 1082. The expert declared under the weather conditions the

bollard's contrast shifted from being "dark against a lighter background, through zero

contrast and to being light against a dark background" such that "the bollard was not

readily apparent to a normal observer unless you knew from previous experience or

memory that a bollard had been installed at this location." CP at 1083. Another

expert claimed the bollard was "functionally hidden (camouflaged)" in the middle of

the trail. CP at 1070. These statements in isolation might create an issue of material

fact on latency. However, Sobek's expert declaration also included a photograph

purportedly showing the bollard in conditions similar to the day the accident occurred.

CP at 1078. This photograph clearly shows the bollard's visibility, no matter the

alleged contrast between the bollard and the pavement. Because the bollard, as

depicted by Schwartz's own expert, is clearly visible to the naked eye, there is no

genuine issue of material fact even in the light most favorable to Schwartz.

5

*Schwartz v. King County*, No. 99359-9
(Owens, J., dissenting)

      c. *The Majority Effectively Overrules* Jewels

As discussed above, Schwartz's case was properly dismissed on summary

judgment under *Jewels*. Schwartz has failed to show a compelling reason why we

should overturn that precedent. "In order to effectuate the purposes of stare decisis,

this court will reject its prior holdings only upon 'a clear showing that an established

rule is incorrect and harmful.'" *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108

(2016) (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466

P.2d 508 (1970)). Stare decisis is especially strong in the area of statutory

interpretation under the doctrine of legislative acquiescence. *State v. Blake*, 197

Wn.2d 170, 190-91, 481 P.3d 521 (2021). Legislative acquiescence provides that

because the legislature is able to amend a statute if it disagrees with the way the court

has interpreted it, the legislature's disinclination to amend a statute's meaning makes

the court's interpretation clear precedent. *Id*. Thus, if we have previously interpreted

a statute and the legislature has had the opportunity to change the statute and has not,

we will not overrule clear precedent when interpreting the same statute later. *Id*. at

190 (citing *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004)).

      Since our decision in *Jewels*, the legislature has considered nine bills to amend

RCW 4.24.210 and passed only one.[1] The bill that passed was not concerned with the

---

[1] The bills that were proposed but ultimately not passed are S.B. 6384 64th Leg., Reg. Sess.
(Wash. 2016); S.B. 5384, 65th Leg., Reg. Sess. (Wash. 2017); SUBSTITUTE S.B. 5099, 66th Leg.,
Reg. Sess. (Wash. 2019); H.B. 2767, 66th Leg., Reg. Sess. (Wash. 2020); H.B. 2909, 66th Leg.,

*Schwartz v. King County*, No. 99359-9
(Owens, J., dissenting)

known dangerous artificial latent exception and instead clarified the types of fees

allowed under the statute without destroying immunity. SUBSTITUTE H.B. 1464,

LAWS OF 2017, ch. 245, §1. Because our decision in *Jewels* is not in conflict with

prior precedent, has been affirmed by the legislature under the doctrine of legislative

acquiescence, and is not "so problematic that it *must* be rejected," the latency test

should remain whether an ordinary recreational user standing near the injury-causing

condition can see it. *Otton*, 185 Wn.2d at 678. Whether the condition can be seen in

a photograph is persuasive evidence for this test, but it is not part of the test itself.

The majority claims it is "resolv[ing] the tension or course correct[ing]" the

latency test articulated in *Jewels*, but the majority effectively overrules *Jewels* in

silence. *See* majority at 13. The majority does so to avoid demonstrating why

overruling our precedent is appropriate. Overruling our precedent "is an invitation we

do not take lightly" because doing so undermines "'the evenhanded, predictable, and

consistent development of legal principles'"; discourages "'reliance on judicial

decisions'"; and detracts from "'the actual and perceived integrity of the judicial

process.'" *State v. Barber*, 170 Wn.2d 854, 863, 248 P.3d 494 (2011) (internal

quotation marks omitted) (quoting *Keene v. Edie*, 131 Wn.2d 822, 831, 935 P.2d 588

(1997)). The majority makes no "'clear showing that an established rule is incorrect

---

Reg. Sess. (Wash. 2020); H.B. 2934, 66th Leg., Reg. Sess. (Wash. 2020); S.B. 6174, 66th Leg., Reg. Sess. (Wash. 2020); S.B. 6541, 66th Leg., Reg. Sess. (Wash. 2020).

7

*Schwartz v. King County*, No. 99359-9
(Owens, J., dissenting)

and harmful.'" *Otton*, 185 Wn.2d at 678 (quoting *Stranger Creek*, 77 Wn.2d at 653).

Similarly, the majority fails to show that the underpinnings of *Jewels* have changed or

disappeared. *See W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*,

180 Wn.2d 54, 66, 322 P.3d 1207 (2014) (the court may reject precedent where the

legal underpinnings have changed). Because the majority does not meaningfully

consider these factors, I decline to join the majority in casting *Jewels* aside.

CONCLUSION

The majority recasts *Jewels'* latency test to avoid admitting that it is overruling

precedent without a reason to do so. Because *Jewels* clearly articulated a condition is

obvious, not latent, if an ordinary recreational user standing near the condition could see

it by observation and because this holding is not so problematic it must be overturned, I

would reverse the Court of Appeals and affirm the trial court. I respectfully dissent.

_____
Owens, J.

_____
Johnson, J.

_____
Madsen, J.

_____
Yu, J.

8